See concurring opinion of PROVOSTY, J., 71 South. 259.

LAND and O'NIELL, JJ., dissent for the reasons assigned in their respective opinions, 71 South. 257, 258.

---

(71 South. 344)

No. 20776.

### WALTHER v. WALTHER.

(March 20, 1916.)

*(Syllabus by the Court.)*

HUSBAND AND WIFE &#9012;272(5)—COMMUNITY PROPERTY—PARTITION—EVIDENCE.

Plaintiff, divorced from her husband, alleging error and fraud in the exclusion of a certain mortgage note from a partition of the com-

munity property, is bound to make out her case by a clear preponderance of the evidence.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1007; Dec. Dig. ☞272(5).]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Georgiana B. Willman Walther against Otto Walther. From a judgment for plaintiff, defendant appeals. Reversed, and suit dismissed.

Woodville & Woodville, of New Orleans, for appellant. D. B. H. Chaffe, of New Orleans, and A. D. Preston, of Beckley, W. Va., for appellee.

LAND, J. The allegations of the petition may be briefly stated as follows:

The plaintiff was divorced from the defendant by judgment of the civil district court for the parish of New Orleans, rendered October 20, 1911.

On October 27, 1911, a partition between the parties of the community assets was had before a notary public. The partition was made on the basis of an itemized statement furnished by the defendant, showing, or purporting to show, the entire assets of the community. This statement was accepted and taken as true by the plaintiff and her counsel, and formed the actual basis of the settlement and partition between the parties. The defendant, however, through design or negligence, omitted from said statement an item of $10,000 belonging to the community, which should have been included in the settlement and partition, and one-half of which, or $5,000, should have been paid over to the plaintiff. The said omitted item was represented by a valid and subsisting mortgage executed by William A. Cooke in favor of the defendant by notarial act of date February 5, 1911, to secure a loan made by the defendant to the said Cooke, and the defendant willfully concealed the said mortgage note.

The petition concluded with a prayer for judgment against the defendant for the sum of $5,000, with legal interest thereon from October 27, 1911, until paid, and costs of suit, "and for all general and equitable relief meet and suitable in the premises."

Defendant filed an exception of no legal right or cause of action, which was heard and overruled by the court.

For answer, after pleading the general issue, the defendant admits the existence of the Cooke mortgage note at the time of the partition, but denies that the defendant or the community had any real interest in said note, which was at that time held in pledge by third parties to whom the community was indebted for an amount slightly in excess thereof. Defendant, further answering, denies that he practiced any fraud on the plaintiff in failing to disclose the existence of said note, which was of no material benefit to him, and avers that, in addition to the debt for which the note was pledged, there were other debts of the community in excess of the amount of the face value of said note, all of which debts the defendant assumed, without receiving any benefit or consideration therefor in the partition with the plaintiff, she receiving more than one-half of the real assets of the community over and above its liabilities.

After the evidence was adduced on the trial of the case, on allegations of error and mistake of fact on the part of the counsel for defendant, he was permitted by the court to supplement his original answer, by averring that one Mr. Palfrey owned the Cooke mortgage note at the time of the partition.

A rule by the plaintiff to set aside the order permitting the filing of the supplemental answer was heard and discharged, "reserving the right to either party to offer further evidence."

The trial was concluded, and there was judgment in favor of the plaintiff, pursuant to prayer of her petition.

The defendant has appealed, and submits, first, that the judgment overruling his ex-

ception should be reversed, and said exception should be maintained.

Counsel for defendant in their brief say:

"The most that plaintiff is entitled to is her share of said asset, which she alleged belonged to the community, and which has never been partitioned. She is entitled, if the allegations are true, to have an inventory and appraisement made of this article, and the same duly partitioned, either in kind, if possible, or by licitation."

This argument admits that the plaintiff, on the face of the petition, owns an undivided half interest in the Cooke mortgage note for $10,000, and is entitled to have the same partitioned according to law. It is a legal sequence of the allegations of the petition that the defendant is bound to account to the plaintiff for said note, or to pay her one-half of its value at the date of the dissolution of the community. While the plaintiff prays for a present money judgment against the defendant, she also prays for general and equitable relief in the premises. Such a prayer authorizes all ordinary decrees which the pleadings and evidence may justify. Leland v. Rose, 11 La. Ann. 69; Kinder v. Scharff, 125 La. 595, 51 South. 654. As plaintiff, on the face of the petition, if not entitled to a money judgment, as prayed for, is entitled to a decree recognizing her undivided half interest in the Cooke mortgage note, it cannot be held that the petition discloses no right or cause of action. We therefore think that the defendant's exception was properly overruled.

The original answer of the defendant admitted that the Cooke mortgage note for $10,000 belonged to the community, but averred that it had been pledged to its full value for the debts of the community.

The supplemental answer of the defendant averred error and mistake in the original answer as to the ownership of the note, and that, in truth and fact, the said note belonged to a Mr. Palfrey, and not to the community which existed between the defendant and the plaintiff.

The partition of October 27, 1911, was made between the defendant and the plaintiff for the declared purpose—

"to partition and divide in kind the assets of the community which formerly existed between them, forever settling each other's rights and titles in and to said property and adjusting all their differences."

In the act of partition certain described property, real and personal, was assigned to the plaintiff in full ownership; and the act recites that she accepted the same in full settlement and satisfaction of all her rights, titles, and interest in the community, said described property, as acknowledged by her, constituting exactly one half of the property owned by the community, and that the other half of the community property, specifically described, was assigned to the defendant; it being understood between the parties that the partition of the property which belonged to the community was final and complete. The concluding paragraph of the agreement of partition reads as follows:

"It is expressly agreed that the said Otto Walther assumed and promises to pay all the debts of the late community to the exoneration and discharge of said Mrs. Otto Walther, and without recourse upon her for any part thereof."

In this partition each party received property to the value of $29,468.18.

Plaintiff testified that at the time of the partition she knew nothing of the existence of the Cooke mortgage note for $10,000, and that the defendant furnished the list of property, real and personal, which was used as the basis of the partition.

The deposition of the defendant was taken in Germany; and he testified, in substance, that at the time of the settlement of the community in question the Cooke mortgage note was owned and held by Mr. Palfrey of the New Orleans National Bank. It appears from the answers of the same witness to cross-interrogatories that Mr. Palfrey held as collateral for an old loan five mortgage notes of the defendant for $4,000 each, and

that he, in order to make a settlement with his wife, who had not yet sued for a divorce, induced Mr. Palfrey to accept the Cooke mortgage note for $10,000 and $2,000 in cash in lieu of the five mortgage notes aggregating $20,000, which were surrendered and canceled. The same witness continues as follows:

"Some time during December, 1911, Mr. Palfrey sent for me and told me that his client who owned the Cooke note of $10,000 was very dissatisfied, and asked me if I could arrange in some way to repurchase the note from him and that he would very much appreciate my doing so. After some little discussion I consented to his request, as I felt he had treated me so fairly, and as I had mortgaged my Marengo street property for $12,000, I then and there without further delay went with Mr. Palfrey and paid him the $10,000 in cash and some little accrued interest, and he handed me the Cooke note."

The mortgage was on a small vessel. The same witness testified that the Cooke note was subsequently renewed on February 9, 1912, in the form of two notes for $5,000 each, Mr. J. A. Woodville, appearing as the owner of the notes; that the first note for $5,000 was paid in March, 1913, to defendant's representative, and the second note is held by the defendant.

The record evidence shows that the five mortgage notes for $4,000 each were executed by the defendant in November, 1903, and that the mortgage securing the same was canceled by act before a notary on October 30, 1911, on the production by defendant of said notes marked paid.

The evidence shows that on December 4, 1911, the defendant borrowed $15,000 on a mortgage of his Marengo street property, which had been assigned to him in the partition.

No rebuttal evidence was adduced to contradict the testimony of the defendant, which on its face is not unreasonable or improbable. There was a special mortgage for $20,000 on the community real estate, which was formally canceled on the third day after the partition, but this is no contradiction of defendant's testimony that the notes secured by the mortgage were taken up by him before the divorce suit was filed. If the Cooke note was not used in taking up said notes, as testified by defendant, what community assets were used for that purpose? The five notes were paid before the partition; the act reciting that the property was free of incumbrances.

The testimony of the defendant was taken under commission in Germany, and consequently the judge below did not have the advantage of seeing and hearing the witness. The witness has not been impeached, nor has he been contradicted on any material point.

The evidence shows that the defendant's vocation was that of contractor and builder, and that he was closely connected in a business way with Mr. Cooke, who represented a number of fire insurance companies, and who was called upon from time to time to let out repair and construction work. The fact that the defendant had accumulated community property to the value of some $59,000 shows that he was a successful business man.

The burden of proof was on plaintiff to make out her case by a preponderance of the evidence. She, assisted by competent counsel, acknowledged that the act of partition included all the assets of the community, and on the faith of that settlement the defendant assumed the payment of all the debts of the community. The defendant testified that the known debts of the community amounted to some $400 or $500, and that after the divorce the plaintiff had several hundred dollars worth of repairs made on property acquired by her in the partition, and the bills were charged to and paid by him. Defendant further testified that he had been sued by the Keystone Life Insurance Company for $2,000 on a community stock subscription.

On the record before us, we would not be justified in finding that the defendant withheld the Cooke mortgage from the partition, and has committed perjury in order to conceal his fraudulent conduct.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, at her cost, in both courts.