HAZEL KENT, ADMINISTRATRIX AD PROSEQUENDUM OF JOHN F. CROSBY, DECEASED, AND GENERAL ADMINISTRATRIX OF THE ESTATE OF JOHN F. CROSBY, DECEASED, PLAINTIFF-RESPONDENT, v. COUNTY OF HUDSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 2, 1967—Decided October 17, 1967.

92

Before Judges CONFORD, COLLESTER and LABRECQUE.

*Mr. Daniel F. Gilmore,* Assistant County Counsel, argued the cause for appellant (*Mr. William F. Kelly, Jr.,* County Counsel of Hudson County, attorney).

*Mr. Lewis M. Holland* argued the cause for respondent (*Messrs. Warren, Chasan, Leyner & Holland,* attorneys).

PER CURIAM. Defendant appeals from the grant of a new trial in this action for recovery of damages sustained by plaintiff's decedent during the four days between the day he was severely burned while a patient in the defendant's

hospital and his death from such injuries.[1] The jury had returned a verdict of no cause for action. The new trial was granted solely for the purported reasons that inaccuracies in the transcript of the trial were so extensive as to deprive the plaintiff of an adequate record for appellate review and that the trial reporter had declined to certify the transcript because not accurate or true. This trial was the reporter's first experience in reporting a trial in court. He had been engaged because of a shortage of qualified reporters in Hudson County.

The matter came to the attention of the trial court when it was considering a motion for a new trial on conventional grounds, including alleged errors in the court's charge, only to find a number of obvious errors and omissions in the transcript of the charge. The court thereupon undertook pursuant to *R. R.* 1:6–6 to correct the mistakes in the transcript of the charge by calling in the reporter in the presence of counsel. After three half-days of effort the court revised the transcript and produced a "Corrected Charge" which it describes in its opinion granting the new trial as follows:

"After comparison between the court's and the reporter's notes, the court was morally convinced that a fair representation of the substance of the charge eventuated, though expressed inarticulately [*sic*] in the revision. The court nevertheless was left with a feeling of insecurity that the revised charge was completely accurate for there were some points in the revision which the court could not literally reconcile with its own notes of the charge and there were also some omissions in the notes as transcribed."

We have ourselves read the original and revised versions of the charge and entertain the view that the trial judge did an excellent job of accurately repairing the occasional passages where errors appeared in the transcript. It may be observed that the correct rendition is frequently obvious

---

[1] A count for wrongful death was dismissed on motion at the end of the plaintiff's case for absence of proof of pecuniary loss to the next of kin.

from the nature of the error in the text as first transcribed. Merely by way of illustration, and not to be at all comprehensive as to all types of errors, the reporter on several occasions renders "active wrongdoing" as "act of wrongdoing" and "negligent act" as "negligence act." Some errors are typographical or as to spelling. Plaintiff has not argued below or here that the revised charge is not a substantially accurate version of the instructions given the jury by the judge. But in any event, having regard to the exceptions taken to the charge by plaintiff at trial, and the present representations by plaintiff as to the alleged errors in the charge which will be asserted on appeal, we are of the opinion that the record is now eminently adequate to enable the fair appellate consideration thereof.

The exceptions or objections taken to the charge were these: (1) the court should not have submitted the issue of contributory negligence to the jury;[2] (2) there was error in telling the jury that the operation of the hospital was a governmental function; (3) the court charged proximate cause in the "time-honored" language rather than by using the definitions in the "new cases" which counsel deemed "far better"; (4) there was error in defining active wrongdoing to the extent that the jury was told that the "act of commission had to be a wrongful act."

During the argument of the motion the trial court properly expressed concern with the question whether any of the errors in the transcription of the charge, even as originally made, involved "matters of substance which would prevent a proper review by an Appellate Court of the points which Mr. Chasan [attorney for plaintiff] wishes to make and the court will be called upon to decide." See *State v. Smith,* 84 *N. J.*

---

[2] Apparently because the decedent was senile and unable to exercise self-care. He was burned to death when his clothes caught fire, allegedly from cigarettes and matches, he being then restrained in a chair by a sheet. The contention is the hospital was negligent in providing him with cigarettes and matches, and restraining him, in the absence of an attendant.

*Super.* 452, 457 (*App. Div.* 1964); *People v. Chessman,* 35 *Cal. 2d* 455, 218 *P. 2d* 769, 772–773 (*Sup. Ct.*), *certiorari* denied 340 *U. S.* 840, 71 *S. Ct.* 29, 95 *L. Ed.* 616 (1950); *Murphy v. St. Paul Fire and Marine Ins. Co.,* 314 *F. 2d* 30, 31 (5 *Cir.* 1963).[3] The judge then declared that insofar as the exceptions relating to contributory negligence and the definition of active wrongdoing were concerned, the transcript as it then existed "clearly raised the issues." We fully agree. But in his final disposition of the motion the judge failed to return to the application of his previously stated and soundly conceived criterion for judging the relief sought, and in this we think he was led into error.

■■ The asserted inadequacy of the record for purposes of appeal can be appraised only in terms of the grounds available for presentation on appeal. See the cases cited above. Assuming, as we do not now decide, that all four objections to the charge were stated in terms sufficiently explicit to preserve them as grounds of appeal, *R. R.* 1:5–3, we are well satisfied that the transcript of the charge, particularly as revised by the court, fully lays the basis for appellate argument of each of the substantive contentions desired to be made by plaintiff. Two of the exceptions to the charge have no relationship at all to the precise text of the language of the charge. The others are not argued by counsel or found by the trial court to lack an adequate basis in the record to enable the points to be fully and fairly presented. Such a basis clearly exists.

Any remaining theoretical or conjectural omissions or incompleteness in the charge as revised would be irrelevant since not "material to either party" in respect of a point available and intended to be urged on appeal. *R. R.* 1:6–6. And consult the cases cited above.

---

[3] Consider also that for purposes of review where no stenographic record is made of the trial at all, the trial court is nevertheless expected to settle a statement of the evidence from proposals submitted by the parties "from the best available sources," including recollection. *R. R.* 1:6–3.

It is consequently concluded that no proper basis for the award of a new trial existed insofar as any deficiencies in the transcript of the charge are concerned.

Plaintiff also contends that errors in the transcript of the trial, apart from the charge, were such as to justify the court's grant of new trial. This raises the question whether any such inadequacies or inaccuracies in the transcript were so material to a fair review and so pervasive and beyond effective corrective action by the court under *R. R.* 1:6–6 as to have destroyed an adequate basis for appellate review. In this regard, again, we must consider what the relevant grounds of appeal would have been. Plaintiff can suggest only the contentions made in her motion for new trial, *i. e.,* she was entitled to a judgment notwithstanding the verdict and the verdict was against the weight of the evidence. (She also complained of the charge in two of the respects noted above.) The court never decided the question whether the asserted transcript errors were such as to prevent fair appellate consideration of the right to judgment *n. o. v.* and the weight of the evidence. Rather, it decided that to attempt to correct the 168 errors (in an over 200-page transcript) alleged by plaintiff, plus possible additional omissions, with the consequent necessity of the court's going over the claims as to these with counsel and reporter, would entail a burden involving undue delay, in view of the delay already had in correcting the transcript of the charge. The court concluded that it should not undertake that burden but should grant a new trial instead. Reliance was also placed on the reporter's refusal to certify.

But the discussion of a few of the 168 asserted errors during the motion (not all were specified during the motion) revealed that many of them were matters of spelling, typography, or of technical terms unfamiliar to the reporter but readily cognizable and correctible by the court. Others were concededly not so easily rectified. However, most of the errors appear in colloquy between court and counsel on objections and legal argument, and some are of a kind un-

fortunately found in many trial transcripts that come before our appellate courts.[4] It is of interest to note that the trial judge did not hold or intimate that he could not have decided the merits of the motion for a new trial on the asserted grounds of weight of evidence or right to judgment *n. o. v.* without recourse to the trial transcript. Indeed, the rules contemplate that ordinarily such a motion shall be decided on the judges trial notes without awaiting the transcript. *R. R.* 6:41-2. In any event, we have read the entire trial transcript as set forth in the appendix and entertain no doubt whatever that it will suffice to enable us to decide those questions when they ultimately come before us. The transcript of the testimony itself is free from error to any substantial extent, and it affords a lucid picture of the evidence bearing upon the facts material to liability. It is as good as many trial transcripts that come before us these days. As to the occasional transcript errors in colloquy and argument, these will not hamper an appellate determination of the claims of error mentioned.

The refusal of the reporter to certify, under these circumstances, did not justify granting a new trial. He had probably and understandably been upset by the ordeal of the efforts to rectify the charge in this, his first courtroom experience. He could probably have honestly certified the transcript as true and accurate *to the best of his ability* had that qualification of the certification been used, as it sometimes is.

The able and conscientious trial judge acted in this case out of an abundance of concern for the fair treatment of plaintiff. However, the relief granted was at the cost of depriving defendant of an acquittal of liability which it had won in a regularly conducted jury trial and without any judicial determination that prejudicial error attended its

---

[4] Even the transcript of the motion for a new trial in the instant appendix (not made by the trial reporter) has a number of such errors, *e.g.*: "Mr. Chasan: Your Honor, if you want me to argue the usual burden of emotion [*sic*] for a new trial I will do so."

victory. Our public policy values highly the final disposition of litigation, particularly after the expense, time and effort to all concerned of a jury trial. Here there has also been the expenditure of time involved in what we think was a successful rehabilitation of the substance of the charge. A completed trial should not be nullified for deficiencies in a record except after a fair and thorough effort to exhaust the corrective machinery of *R. R.* 1:6-6, and then only when it is clearly indicated that prejudice in the appellate process will necessarily result from the deficiencies still remaining after the corrective measures have been applied. *State v. Smith, supra.* We are certain that no such prejudice will exist on the appeal here. Indeed, the revision of the charge sharpens plaintiff's allegations of error therein.

Measured by these principles and findings, the action here appealed must be adjudged a mistaken exercise of discretion. The judgment is reversed and the matter remanded for disposition of the undetermined grounds of the motion for a new trial. No costs.